**In re MADISON HOTEL ASSOCIATES, a limited partnership, d/b/a The Concourse, Debtor.**

**Bankruptcy No. 82–C–694–C.**

United States District Court, W.D. Wisconsin.

May 18, 1983.

Gregory E. Scallon, Stafford, Rosenbaum, Rieser & Hansen, Madison, Wis., for creditor Prudential Ins. Co.

Robert M. Whitney, Walsh, Walsh, Sweeney & Whitney, S.C., Madison, Wis., for debtor Madison Hotel Associates.

CRABB, District Judge.

## OPINION AND ORDER

This is an appeal from an order of the United States Bankruptcy Court for the Western District of Wisconsin confirming Madison Hotel Associates' (MHA) plan of reorganization under Chapter 11 of the Bankruptcy Act. The appellant, Prudential Insurance Company of America, objects to MHA's plan as not protecting Prudential's judicially-recognized interests in the property that is the subject of the reorganization.

In confirming the plan, the bankruptcy judge made no findings of fact. Those relevant facts that appear in the record and are undisputed are set forth under the heading, "Facts."

## FACTS

The Prudential Insurance Company of America holds a first mortgage and first security interest in real and personal property of Madison Hotel Associates known as the Concourse Hotel. MHA has been in default in its payments to Prudential for a number of years.

On August 17, 1981, in a case brought by Prudential against the general partners of MHA entitled *Prudential Insurance Company of America v. Wild,* 79–C–44, this court entered an order determining that MHA had been and continued to be in continuous default under the terms of Prudential's note, mortgage, and security agreement covering the Concourse Hotel. The court held that Prudential could proceed both to foreclose the first mortgage by judicial proceeding under the terms of the mortgage and to foreclose and sell the collateral of the security agreement. Under the terms of the order, Prudential had until August 24, 1981, in which to submit a form of

judgment of foreclosure for the court's signature.

On August 24, 1981, MHA filed for bankruptcy under Chapter 11 of the Bankruptcy Code. On September 25, 1981, William A. Brown, trustee in bankruptcy for Citizens Mortgage Investment Trust (CMIT), a secured creditor of MHA, moved for dismissal of the Chapter 11 proceeding under 11 U.S.C. § 1112 or, in the alternative, for the bankruptcy court to abstain from exercising jurisdiction. Prudential intervened in the motion. A hearing was held on December 22, 1981, at which counsel for Prudential and for CMIT argued that MHA's pre-filing conduct was evidence of its bad faith in utilizing Chapter 11 proceedings to gain an unfair financial advantage from its mortgagees. The bankruptcy court denied the motion to dismiss and the alternative motion to abstain. The bankruptcy court heard no evidence at the hearing on the motions.

It appears that the bankruptcy court considered that the proponents of the motions would be able to offer the evidence they asserted they could and that the bankruptcy court viewed that proffered evidence in the light most favorable to its proponents. The bankruptcy court denied the motion to abstain on the ground that the movants had not demonstrated that any other court could preserve the rights of the other creditors and do equity to all of the parties. The bankruptcy court denied the motion to dismiss on the ground that absence of good faith is not a basis for dismissal under 11 U.S.C. § 1112, and, although it is not entirely clear, it appears that the bankruptcy court may have concluded also that, even if absence of good faith were a ground for dismissal, the debtor had shown sufficient unsuccessful efforts to reorganize to rebut any claim of bad faith in the initial filing for relief under Chapter 11.

On January 4, 1982, the bankruptcy court denied a motion by Prudential for relief from stay under 11 U.S.C. § 362. Prudential contended that the stay of its foreclosure action denied it adequate protection and that MHA did not bring its petition to the bankruptcy court in good faith. The

bankruptcy court held that the only issues it would consider in connection with the motion were the effect that entry of judgment would have on the debtor's ability to obtain financing and the delay, if any, that would be caused by entry of judgment and a subsequent appeal.

On July 14, 1982, the bankruptcy court entered an order confirming MHA's Plan of Reorganization of the Concourse Hotel property. MHA's plan called for payment of its default and reinstatement of its debt to Prudential.

On July 21, 1982, Prudential filed the notice of this appeal from the bankruptcy court's order of confirmation.

## OPINION

In its appeal, Prudential contends that the bankruptcy judge erred:

1) in not finding Prudential's claim "impaired" under the terms of 11 U.S.C. § 1124 and in concluding that Prudential was not entitled to reject the plan and require MHA to show that the plan does not discriminate unfairly with respect to each class that is impaired;

2) in finding that MHA's Plan of Reorganization was presented in good faith, as required for confirmation of a plan;

3) in approving a plan that does not provide Prudential with at least the equivalent of what it would receive if MHA were liquidated;

4) in approving a plan that does not provide adequate means for its execution.

Prudential makes the additional argument that the bankruptcy court lacked jurisdiction over the Chapter 11 proceeding. Neither it nor MHA has pursued this argument with any vigor; it appears to be a *pro forma* objection to preserve any rights Prudential might have. In view of the clear prospective effect of the holding in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* — U.S. —, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), I conclude that Prudential's attack on the bankruptcy court's jurisdiction is without merit.

I turn first to Prudential's argument that its claim must be considered impaired.

## 1. Impairment

As part of the reorganization process under Chapter 11 of the Bankruptcy Act of 1978, the debtor (or trustee) must file a plan of reorganization which classifies the various kinds of claims against, or interests in, the debtor's property. In classifying the claims and interests, the debtor is to "specify any class of claims or interests that is not impaired under the plan," 11 U.S.C. § 1123(a)(2) and is to "specify the treatment of any class of claims or interests that is impaired under the plan," 11 U.S.C. § 1123(a)(3).

 A finding of impairment or non-impairment determines a creditor's right to vote on the reorganization plan. A creditor that is unimpaired is *deemed* to have accepted the plan, relieving the debtor of any need to solicit an acceptance by that creditor or class of creditors; any other creditor has the right to accept or reject a plan. 11 U.S.C. § 1126(f) and (a). Confirmation may be obtained even where there is a class that is impaired and does not accept the plan, but only if the bankruptcy court finds that the plan does not discriminate unfairly with respect to each class that is impaired or has rejected the plan. 11 U.S.C. § 1129(b).

Prudential is contending that it has an impaired claim and that, because it did not accept the plan, the bankruptcy court was required to make a finding as to whether or not MHA's plan discriminates against Prudential. Prudential asserts that the bankruptcy court's failure to make such a find-

ing requires this court to remand this matter for further proceedings in the bankruptcy court.

Whether or not a claim is impaired under 11 U.S.C. § 1124 is a question of law. In evaluating the correctness of the bankruptcy judge's conclusion, I am required to make an independent determination, although in evaluating his findings of fact, I would apply the "clearly erroneous" standard of review. *In re Maitlen,* 658 F.2d 466 (7th Cir.1981).

 A class of claims or interests is considered to be "impaired" unless the plan leaves unaltered the holder's legal, equitable, and contractual rights, or, if there is a right to accelerated payments under a contractual provision or statute, unless the plan provides for (1) the curing of the default, (2) reinstating the maturity of the claim or interest and (3) compensating the holder for the cost of its reasonable reliance upon the contractual provision or applicable law. 11 U.S.C. § 1124.[1] In other words, a plan does not impair a claim or interest if it only alters the holder's right under some contractual provision or applicable law to demand or receive accelerated payment of the claim or interest after default. "Claim" is defined in the Bankruptcy Code as, among other things,

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured;

---

1. In pertinent part, 11 U.S.C. § 1124 reads as follows:

Impairment of claims or interests. Except as provided in section 1123(a)(4) of this title, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan:

(1) leaves unaltered the legal, equitable and contractual rights to which such claim or interest entitles the holder of such claim or interest;

(2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default—

(A) cures any such default, other than a default of a kind specified in section 365(b)(2) of this title, that occurred before or after the commencement of the case under this title;

(B) reinstates the maturity of such claim or interest as such maturity existed before such default;

(C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and

(D) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest. . . .

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;

■ It is Prudential's contention that MHA's plan alters MHA's judicially-recognized right to a foreclosure sale of the real and personal property of the hotel and that this right is separate from, and in addition to, Prudential's contractual right to receive accelerated payments upon default in the mortgage payments.

In holding that MHA's plan did not impair Prudential's claim, the bankruptcy court adopted the reasoning of the United States Bankruptcy Court for the District of Alaska in *In re Hewitt,* 16 B.R. 973 (Bkrtcy. D.Alaska 1982), agreeing implicitly with that court's conclusion that a judgment of foreclosure was not a claim that would be impaired by reversal of acceleration pursuant to a plan of reorganization. In reviewing the bankruptcy court's finding of non-impairment, I must determine whether the *Hewitt* case supplies the correct legal standard for such a finding. Because I believe that *Hewitt* was decided incorrectly, I conclude that the bankruptcy court erred in relying upon it in this case.

It should be noted that in *Hewitt* the issue of impairment arose on a motion for relief from the automatic stay provisions of 11 U.S.C. § 362, not in connection with confirmation of a plan. The bankruptcy court was considering whether to permit the Hewitt's creditors to proceed with proceedings to enforce the judgment of foreclosure they had obtained in state court. In deciding the motion, the bankruptcy court assumed that the Hewitts would submit a reorganization plan under Chapter 11 that would provide for curing the default and for reinstating the maturity of the note and mortgage. On this assumption, the bankruptcy court denied the motion for relief from the stay on these grounds: "Section 1124(2) of the Code allows a debtor pursuant to a Chapter 11 plan to reverse the acceleration of an obligation caused by his default"; the formal entry of judgment of foreclosure by a court is simply the application of a contractual provision or applicable law requiring acceleration; and even where a judgment of foreclosure has been obtained, reversal of acceleration does not impair any claim, even a right to payment which has been reduced to judgment.

In the bankruptcy court's opinion, § 1124, read with 11 U.S.C. § 101(4), evinces "a Congressional intent *to apply the remedy of § 1124(2)* to obligations regardless of whether or not they have been reduced to judgment." (Emphasis added.) In this last statement, the bankruptcy court reveals its misconception of § 1124. This statute has nothing to do with "remedies" of cure and default; it is concerned only with identification of those classes entitled to vote on the acceptance of a plan. It is apparent that the bankruptcy court thought that the statute was analagous to 11 U.S.C. § 1322(b)(5) which permits a Chapter 13 debtor to cure a default on a long-term residential mortgage, because the bankruptcy court cited cases interpreting this section of the Code in support of its position that § 1124(2) should be read broadly. Among the cases the bankruptcy court cited in *Hewitt* was *In re Taddeo,* 9 B.R. 299 (Bkrtcy.E.D.N.Y.1981), in which the bankruptcy court also viewed § 1124(2) as having curative powers for corporate debtors. That view was corrected by the Court of Appeals for the Second Circuit which pointed out that, in fact, § 1124 merely determines

> who has the right to vote on a Chapter 11 plan. Those parties with "impaired" claims or interest can vote, and § 1124(1) declares that any change in legal, equitable or contractual rights creates impairment. Having defined impairment in the broadest possible terms, Congress carved out a small exception to impairment in § 1124(2) providing that curing a default, even though it inevitably changes a contractual acceleration clause, does not thereby "impair" a creditor's claim.

*In re Taddeo,* 685 F.2d 24, 28 (2d Cir.1982).

As the court of appeals notes, § 1124(2) is not a provision to be interpreted broadly;

rather, it is a narrow exception to the general concept of impairment.

The bankruptcy court erred again in *Hewitt* when it stated that § 1124 "declares that 'no class of claims' is impaired by reversal of acceleration, and 'claim' is defined in § 101(4) to include any 'right to payment, whether or not such right is reduced to judgment....'" *In re Hewitt,* 16 B.R. at 977. This is not what § 1124 "declares." Section 1124 does not say anywhere that "no class of claims is impaired by reversal of acceleration"; it says that any class of claims is impaired except those claims that reflect an automatic statutory or contractual right to acceleration and that are to be cured in the plan.

In my opinion, the bankruptcy court was also wrong in holding that the formal entry of judgment is nothing more than the application of a contractual provision or statute requiring acceleration of payments upon default. A judicially-recognized right to foreclosure is something different from a right to accelerated payments that arises by operation of a contractual provision or of applicable law. It is a right that arises only at the conclusion of a judicial proceeding and only after a court has determined the rights and obligations of the parties. To say that a court order is nothing more than the application of "applicable law" to "contractual provision," and therefore within the exception set out in § 1124(2) is to misread the language of the statute and the intention of Congress. Other sections of the Code make it clear that Congress did not view a court order as synonymous with "applicable law" or "contractual provision." For example, at 11 U.S.C. § 108, the Code distinguishes among the terms, "applicable law," "order entered in a proceeding," and "an agreement." At 11 U.S.C. § 101 the Code distinguishes among three different types of liens: (1) security interests, *i.e.,* liens "created by agreement" § 101(37); (2) judicial liens, *i.e.,* liens "obtained by judgment ... or other legal or equitable process or proceeding" § 101(27); and (3) statutory liens, *i.e.,* liens "arising solely by force of a statute on specified circumstances or conditions," but not including judicial liens or security interests § 101(38). Had Congress wanted to include rights derived from judicial orders, it would have said so. Certainly, Congress is well aware of the different ways in which a creditor might become entitled to acceleration of payments, as common as such provisions are in the law and in security agreements.[2]

It is consistent with its expressed concern for *temporary* crises "which the plan or reorganization is intended to clear away," S.Rep. No. 989, 95th Cong., 2d Sess. 120 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5906, that in § 1124, Congress excluded only those creditors who had *automatic* acceleration rights from voting on the acceptance of a plan. By its very nature, a court order of foreclosure is a different kind of claim, reflecting a longer lasting financial crisis, extending at least as long as the period of time necessary for the lender to seek and obtain relief from a court.[3]

It is not only the derivation of Prudential's right to foreclosure that distinguishes from the class of claims considered unimpaired under § 1124(2), it is the fact that through the judicial proceeding Prudential has acquired a right that is separate from, and additional to, the right to accelerated payments. By virtue of the decision determining its right to foreclosure, Prudential is not limited to recovery of accelerated pay-

---

**2.** Wis.Stats. § 74.03(4) is an example of a statutorily-triggered right to acceleration. This statute provides that the full amount of real estate taxes will become due and payable if the first installment of such taxes is not paid on or before January 31. The mortgage at issue here is an example of a contractual right to acceleration. The parties had agreed that the whole indebtedness would become immediately due and payable if the debtor defaulted in the payment of interest or principal.

**3.** The instant case is an unfortunate example of the difficulties that can arise in obtaining a judicially-recognized right of foreclosure. Prudential filed its action for foreclosure in this court in 1979. It was not until August, 1981, that the court determined Prudential's entitlement to a judgment of foreclosure.

ments from the debtor; it has the right to begin proceedings to seek recovery of its investment from some source other than the financially-troubled mortgagor. *See In re St. Peter's School,* 16 B.R. 404, 409–10 (Bkrtcy.S.D.N.Y.1982) ("The foreclosure judgment provides the [creditor] with an additional right to immediate realization of its legal, equitable and contractual interests.") *See also In re Monroe Park,* 18 B.R. 790 (Bkrtcy.D.Del.1982) (cure of default and reinstatement of maturity date of a mortgage are no longer possible after entry of judgment or even after entry of summary judgment in favor of creditor); *In re Antilles Yachting, Inc.,* 4 B.R. 470, 474 (Bkrtcy. D.V.I.1980) (lien holder with confessed judgment of foreclosure is impaired if forced to forgo payment of that judgment and participate in high risk plan).

MHA contends that even if a judgment of foreclosure creates rights that are considered impaired if altered under a Chapter 11 reorganization plan, Prudential's claim cannot be considered impaired because the court's order determining Prudential's right to foreclosure was never reduced to judgment.

■ There is no question that the August 17 order was never reduced to judgment. Because it was not, the times for appeal, for post-trial motions, for execution of judgment, and for redemption have not yet started to run. But that does not mean that the order is of no legal significance. The order establishes Prudential's legal right to offer the hotel at foreclosure sale; it estops MHA from relitigation of the issues raised in the foreclosure action; it terminates MHA's rights under the mortgage; it lacks only the formal entry of judgment which would have occurred but for MHA's filing of its petition in bankruptcy.

I consider it somewhat sophistical for MHA to contend that there is no legal significance to an order it resisted vigorously for two and one-half years and which would have gone into effect had MHA not won the race to the courthouse.

■ I conclude that MHA's plan impairs Prudential's claim because it does not restore Prudential's judicially-recognized right to proceed with foreclosure of the real and personal property of the Concourse Hotel. And, because Prudential's right to foreclosure does not arise merely from a contractual provision or applicable law but is created by court order and is not simply a right to accelerated payments which can be cured, Prudential's claim does not fall within the exception created by § 1124(2). Therefore, Prudential cannot be *deemed* to have accepted MHA's plan under 11 U.S.C. § 1126(f) and this matter must be remanded to the bankruptcy court for a determination of the plan's validity under 11 U.S.C. § 1129(b).[4]

### 2. Good Faith

■ 11 U.S.C. § 1129(a)(3) makes it a condition of acceptance of a reorganization plan that "the plan has been proposed in good faith and not by any means forbidden by law." Prudential contends that this provision requires the bankruptcy court to evaluate the debtor's pre-filing conduct as well as the feasibility of the plan itself.

■ I agree. The bankruptcy court is a court of equity and as such is obligated to balance the rights and interests of all of the parties affected by the proceedings before the court. Although it is not clear whether this determination is to be made at the

---

4. Additionally, it appears that MHA's plan impairs Prudential by altering rights that Prudential had under its mortgage and security agreement with MHA. MHA was not to place any additional encumbrances upon the personal property without Prudential's express consent and MHA was to pay the real estate taxes when due. Under the plan, MHA has assigned to MHA, Inc., MHA's debt to The First Wisconsin National Bank of Madison and has secured

the new debt to MHA, Inc. with a mortgage on the hotel and a security interest in the personal property of MHA.

Because I conclude that Prudential is impaired by the loss of its right to proceed to foreclosure, I need not decide whether these additional alterations of its contractual rights would constitute impairment of its claim within the meaning of § 1124.

outset of the case on a motion to dismiss under 11 U.S.C. § 1112, *In re Victory Construction Co., Inc.,* 9 B.R. 549 (Bkrtcy.C.D. Cal.1981), or in connection with confirmation of a plan, it is clear that it must be made at some time during the Chapter 11 proceeding if the issue of bad faith is raised by any party to the proceeding. The new Bankruptcy Code confers upon bankruptcy courts the traditional equitable power to dismiss petitions filed in bad faith. *See, e.g., Weathersfield Farms, Inc. v. First Inter-State Bank,* 15 B.R. 282 (D.Vt.1981); *In re Alton Telegraph Printing Co.,* 14 B.R. 238 (Bkrtcy.S.D.Ill.1981). *In re Victory Construction Co., Inc.,* 9 B.R. 549. Among the types of cases that can be dismissed for bad faith are those in which the debtor's conduct demonstrates that its sole purpose is to hinder or delay its creditors. *See, e.g., Shapiro v. Wilgus,* 287 U.S. 348, 354, 53 S.Ct. 142, 144, 77 L.Ed. 355 (1932); *In re Jack-Hemp Assocs.,* 20 B.R. 412, 413 (Bkrtcy.S.D.N.Y.1982).

█ In the assertions made by Prudential there are indications that MHA's filing for reorganization may have been motivated by the sole purpose of hindering and delaying its creditors. Prudential points to the lengthy and repetitive litigation engaged in by MHA; large cash distributions to the MHA partners at a time when it was in default to Prudential and to CMIT; prepayment of a debt to First Wisconsin National Bank of Madison, Wisconsin, using a wholly-owned corporation, MHA, Inc., as a means of relieving MHA of $590,000 in cash and at the same time, relieving MHA's partners of any personal liability for the First Wisconsin debt; the listing of unnecessarily impaired trade creditors as unsecured creditors; and inaccurate computation of hotel revenues and expenses relevant to determining the amounts owing to Prudential under its participation agreement with MHA. The indications of misuse of the bankruptcy court are sufficient to require an evidentiary hearing by the bankruptcy court to determine whether MHA's pre-filing conduct demonstrates by a preponderance of the credible evidence that its sole purpose in filing for Chapter 11 reorga-

nization was to hinder or delay its secured creditors, Prudential and CMIT. The determination should not be limited to deciding only whether there is a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code. *In re Nite Lite Inns,* 17 B.R. 367, 370 (Bkrtcy.S.D.Cal.1982).

### 3. *Prudential's Rights Under 11 U.S.C. § 1129(a)(7)*

Prudential contends that, whether or not its claim is considered impaired under § 1124, it has the right to reject any plan that does not provide it with at least the amount it would receive upon liquidation. It argues that under § 1126(f), an unimpaired class is only deemed to accept a plan and that its deemed acceptance may be rebutted by a showing of an affirmative rejection of the plan.

Because I have concluded that Prudential's claim is impaired by MHA's I need not resolve this issue. However, I note that *In re Marston Enterprises, Inc.,* 13 B.R. 514 (Bkrtcy.E.D.N.Y.1981) is persuasive authority for the proposition advanced by Prudential.

### 4. *Inadequacy of Plan*

As Prudential concedes in its brief, the bankruptcy court has not yet held the proceedings to determine the amounts of the debts owed to Prudential and to MHA's other creditors. It would be premature to review the adequacy of MHA's plan until further proceedings have been held by the bankruptcy court.