In re David KALKSTEIN, Debtor.

MAIN LINE FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff,

v.

David KALKSTEIN, Debtor,

and

James J. O'Connell, Esquire, Trustee, Defendants,

and

Ellen Kalkstein, Intervenor.

Bankruptcy No. 82–00120G.

Adv. No. 82–1427G.

United States Bankruptcy Court, E.D. Pennsylvania.

July 18, 1983.

Paul F. D'Emilio, Bala Cynwyd, Pa., for plaintiff, Main Line Federal Sav. and Loan Ass'n.

Stephen H. Frishberg, Norristown, Pa., for debtor/defendant, David Kalkstein.

James J. O'Connell, Philadelphia, Pa., standing chapter 13 trustee.

Joseph G. Murray, Philadelphia, Pa., for standing chapter 13 trustee, James J. O'Connell.

Arnold Machles, Philadelphia, Pa., for intervenor, Ellen Kalkstein.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue *sub judice* is whether the debtor and his wife failed to comply with the terms of a stipulation executed by the mortgagee, the debtor and the debtor's wife thereby permitting the mortgagee to exercise its rights thereunder and proceed with mortgage foreclosure against the residence in question. We conclude that the unambiguous provisions of the stipulation have been complied with by the debtor and his wife and, therefore, the automatic stay provisions of section 362(a) of the Bankruptcy Code ("the Code") remain in full force and effect.

The facts of the instant case are as follows:[1] On January 12, 1982, David Kalkstein ("the debtor") filed a petition for an adjustment of his debts under chapter 13 of the Code. On June 8, 1982, Main Line

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

Federal Savings and Loan Association ("the mortgagee") filed, *inter alia,* a complaint for relief from the automatic stay provisions of section 362(a) of the Code against the debtor. On July 15, 1982, the aforesaid parties stipulated that Ellen Kalkstein ("the debtor's wife") be permitted to intervene in the adversary proceeding brought by the mortgagee. On October 8, 1982, the mortgagee, the debtor, and the debtor's wife negotiated a settlement of the adversary proceeding and entered into a stipulation which we approved on November 23, 1982. Said stipulation provided:

I. Commencing October 1, 1982 and for eleven (11) consecutive months thereafter debtor shall pay to Association the sum of $1,097.11. Commencing October 1, 1983 and for eleven (11) consecutive months thereafter debtor shall pay to association the sum of $1,172.11. Commencing October 1, 1984 debtor shall pay to association the sum of $1,222.11 monthly. All payments to be made on or before the first day of each and every month until the delinquency on the account including all costs and fee incurred in the foreclosure proceeding which the parties agree is in the total sum of $10,930.38 have been paid in full.

Said sums shall be first applied to the regular monthly payment due on the note and mortgage[s] made, executed and delivered by David Kalkstein and Ellen Judith Kalkstein, his wife . . . to Main Line Federal Savings and Loan Association. . . .

\* \* \* \* \* \*

The balance if any shall be applied on account of the delinquent principal, interest, late charges, escrow, costs and fees due on the aforesaid notes and mortgages which the parties agree is in the total sum of $10,930.38.

In the event the escrow for real estate taxes assessed against the premises is insufficient to pay the taxes in full during the discount period, then the above mentioned payment shall be adjusted accordingly.

However, by letter dated January 10, 1983, Main Line made demand upon counsel for the debtor for an immediate payment of $740.00 to pay the 1982 real estate taxes and an adjustment of the monthly payments to provide funds for the 1983 real estate taxes.[2] The mortgagee contends that the debtor and his wife failed to comply with the terms of the stipulation by neglecting to make the payments for said real estate taxes thus permitting it to exercise its rights pursuant to the stipulation, which provides:

In the event that debtor fails to make said payment in full on or before the last day of any month during which said payment is due, then the automatic stay of all proceedings provided under section 362 of the Bankruptcy Reform Act of 1978, 11 U.S.C. Section 362 is modified without any further notice or demand whatsoever to allow plaintiff to proceed with execution process through Sheriff's sale regarding the aforesaid premises in the matter of Main Line Federal Savings and Loan Association v. David Kalkstein and Ellen Judith Kalkstein, his wife, Common Pleas Court of Montgomery County, # 81–19254.

Consequently, on April 13, 1982, the mortgagee filed an "application for order modifying automatic stay under sections 362(a) and 362(e) of the Bankruptcy Code." On April 22, 1983, we granted said application and modified the automatic stay to allow the mortgage to proceed with mortgage foreclosure in the Court of Common Pleas of Montgomery County. However, on May 2, 1983, the debtor's wife filed a petition to vacate our order of April 22, 1983, on the ground that said order was entered in violation of Local Interim Bankruptcy Rule 9003 of this district.

At the outset, we conclude that we must vacate our April 22, 1983, order, which was entered in response to the mortgagee's application to modify the stay filed nine days

---

**2.** *See* Exh. P–1.

previous thereto, because said order was entered in violation of Local Interim Rule 9003, which provides in paragraph (f):

> Any party opposing the motion or application shall, within ten (10) days after service of the motion (with an additional three (3) days if service of the motion was made by mail), file an answer or other response as may be appropriate. In the absence of a timely response, the motion may be treated as uncontested.

The mortgagee contends that the stay was modified, notwithstanding our April 22, 1983, order, pursuant to the terms of the stipulation "without any further notice or demand whatsoever" when the debtor failed to make the demanded real estate tax payment. Therefore, the mortgagee concludes, no additional demand for relief had to be made by it (although it filed an application to modify the stay on April 13, 1983) and, consequently, interim rule 9003 does not apply to the instant situation.[3] We disagree. Assuming, *arguendo*, that the stipulation itself modified the stay, the fact remains that the mortgagee chose to seek the imprimatur of this court and, by so doing, it consented to abide by the rules of procedure adopted by this court. Unfortunately, the April 22, 1983, order granting the mortgagee relief from the stay was prematurely entered. We must, therefore, vacate said order.[4]

■ It is a well-settled principle of contract interpretation that a written document must be construed most strongly against the party who drafted it. *Galligan v. Arovitch,* 421 Pa. 301, 219 A.2d 463 (1966); *Heidt v. Aughenbaugh Coal Co.,* 406 Pa. 188, 176 A.2d 400 (1962). Consequently, the stipulation and, in particular, the paragraph dealing with the real estate taxes, must be strictly construed against Main Line, the party that drafted the stipulation.

Furthermore, we are of the opinion that said paragraph is ambiguous and susceptible of different meanings in the instant case and, accordingly we will consider the words of the stipulation itself, the alternative meanings suggested by counsel and the objective evidence offered in support of those suggested alternative meanings in our interpretation of that paragraph *Mellon Bank, N.A. v. Aetna Business Credit,* 619 F.2d 1001, 1011 (3d Cir.1980).

■ We agree with the position taken by the debtor's wife that the aforesaid paragraph, which does provide for an adjustment of the monthly payment for real estate taxes, could not apply to the collection of real estate taxes for 1982 since any "discount period" for the year 1982 would have expired by the time the stipulation was executed in October of 1982 and approved by us in November of 1982. With regard to the 1983 real estate taxes, we conclude that stipulation does provide for an adjustment of the monthly payments to include any increase in real estate taxes over and above the amount set aside for those taxes in the escrow fund. Accordingly, we will order the debtor to continue making the monthly payments called for in the stipulation to the mortgagee together with any adjustments thereto which are necessary to cover the real estate taxes assessed against the premises for 1983.

■ We are aware of the fact that the mortgagee, on January 10, 1983, notified the debtor of the fact that, in its opinion, the real estate taxes for 1982 and 1983 were due and payable. Sol Koppel testified that he wrote a letter to the mortgagee on February 17, 1983, asking it to restructure the loan to allow for payment over a period of time of the alleged amount due (the real estate taxes) (N.T. 5/19/83 at 37) and that

---

**3.** The mortgagee further contends that we lack jurisdiction over the instant matter because the stay has already been modified by operation of the stipulation.

**4.** The debtor's wife filed her motion to vacate the April 22, 1983 order within the time parameters set forth in paragraph (h) of interim rule 9003, which provides that "[m]otions for reconsideration or reargument shall be served within

said request was refused.[5] Furthermore, the debtor testified that, in April of 1983, he offered to pay the mortgagee the amount it demanded for payment of the 1982 and 1983 real estate taxes. While both this tender by the debtor and the efforts of Sol Koppel transpired more than thirty days after the mortgagee's January 10, 1983, notice and demand, we do not find the failure to pay the amounts demanded within thirty days to constitute an event of default under the stipulation in light of our finding that the language governing the payment of the real estate taxes was ambiguous. This is not the case where a debtor makes an untimely tender of a payment or payments *clearly* due and owing. Rather, the testimony adduced at trial established that the debtor has tendered every monthly payment called for in the stipulation from the time of its execution until the day of trial, with the exception of the disputed real estate tax payments.

ten (10) days after the entry of judgment, order, or decree concerned."

---

5. Sol Koppel, an attorney, was involved in the negotiation and finalization of the stipulation in question.