In re **FOREST HILLS ASSOCIATES**, a New York Limited Partnership, Debtor.

Robert **LEVY**, Stonetree Holding, Inc., and Mehl-Cedar Co., Inc., Plaintiffs,

v.

**FOREST HILLS ASSOCIATES**, Defendant.

Bankruptcy No. 82 B 12282.
Adv. No. 83–5434A.

United States Bankruptcy Court, S.D. New York.

May 21, 1984.

---

Kensington, James, Ressler & Taub, New York City, for debtor; by Howard D. Ressler, New York City, of counsel.

Stroock & Stroock & Lavan, New York City, for Creditors Committee; by John F. Scheffel, New York City, of counsel.

Finkel, Goldstein & Berzow, New York City, for Robert Levy; by Harold Berzow, New York City, of counsel.

BURTON R. LIFLAND, Bankruptcy Judge.

This matter is before the court on the motion for summary judgment filed by Forest Hills Associates ("Forest Hills"), the debtor herein, pursuant to Federal Rule of Civil Procedure 56 and Bankruptcy Rule 7056, and the cross-motion for summary judgment filed by Robert Levy, Stonetree Holding, Inc., and Mehl-Cedar Co., Inc. (collectively "Mehl-Cedar"). The issue presented is whether a debtor is bound, under section 1124 of the Bankruptcy Code,[1] to pay the higher interest rate ("post-maturity interest rate") as provided for in a mortgage to cover post-maturity arrearages and defaults, when the debtor's plan of reorganization provides for deacceleration of the mortgage and payment of arrearages at the pre-maturity interest rate.

### Background Facts

Forest Hills is a New York limited partnership which owns and operates a 12-sto-

---

1. Section 1124 of the Code provides in pertinent part:

 a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan—

 .   .   .   .   .

 (2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurence of a default—

  (A) cures any such default ... that occurred before or after the commencement of the case under this title;

  (B) reinstates the maturity of such claim or interest as such maturity existed before such default;

  (C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and

  (D) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest....

ry, 159 unit apartment building at 64–34 102nd Street, Queens, New York. Mehl-Cedar, the plaintiff in this adversary proceeding, holds a second mortgage on the property as security for a principal indebtedness of approximately $700,000. At the time the mortgage was entered into the parties agreed that it was necessary to maintain a low interest rate on the mortgage so that the monthly mortgage payments would comport with the relatively low cash flow from the property. (Transcript at pp. 19 and 29; Deposition of Joseph Wolf on October 16, 1983 at p. 15). Therefore, the mortgage agreement was drafted to provide for the payment of interest at an annual rate of only 6⅔%. However, paragraph 23 of the rider to the second mortgage provides that in the event of default and acceleration of the debt, a higher rate of interest would be imposed on Forest Hills. Paragraph 23 provides in relevant part:

> Should all sums due or payable under the mortgage ... not be promptly paid in full on or before the due date, stated or accelerated as a result of default, the mortgagor ... shall pay and hereby agree to pay to the mortgage [sic] ... interest thereunder at the rate of two (2%) percent per month on the unpaid balance for each and every month, or any fraction thereof, computed from said date of maturity to the date of actual repayment; said interest shall become due and payable at the same time that interest payments are due under said mortgage and shall be secured by and collected thereunder. . . .

On or about November of 1981, Forest Hills defaulted under the terms of the mortgage. Thereafter, Mehl-Cedar elected to exercise its right to accelerate the principal indebtedness. Upon acceleration, the principal balance matured and became due and payable in full. In addition, the default triggered Forest Hills' obligation to pay the post-acceleration interest rate of 2% per month on the total balance outstanding for each month that the mortgage remained in arrears. Forest Hills failed to make such payments, and Mehl-Cedar commenced a mortgage foreclosure action against Forest Hills in the Supreme Court of the State of New York, Queens County.

On November 26, 1982, Forest Hills filed a petition for reorganization under Chapter 11 of the Bankruptcy Code, thereby invoking the protection of the automatic stay provisions of Section 362(a)(4) of the Code. Section 362(a)(4) applies to stay "any act to create, perfect, or enforce any lien against property of the estate," including foreclosure actions. *See In re Kalkstein*, 31 B.R. 533, 536 (Bkrtcy.E.D.Pa.1983); *In re Ripianzi*, 27 B.R. 15, 16 (Bkrtcy.M.D.Pa. 1982); 2 *Collier on Bankruptcy* ¶ 362.04 at 362–32–34 (15th ed. 1983).

On March 23, 1983, Forest Hills filed a plan of reorganization, pursuant to section 1121 of the Code.[2] The plan provided that "[Mehl-Cedar's mortgage] shall be reinstated in accordance with the provisions of 11 U.S.C. § 1124(2). . . ."[3] Mehl-Cedar object-

---

**2.** Section 1121 of the Code provides as follows:
(a) The debtor may file a plan with a petition commencing a voluntary case, or at any time in a voluntary case or an involuntary case.
(b) Except as otherwise provided in this section, only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter.
(c) Any party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may file a plan if and only if—
(1) a trustee has been appointed under this chapter;
(2) the debtor has not filed a plan before 120 days after the date of the order for relief under this chapter; or
(3) the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief under this chapter, by each class the claims or interests of which are impaired under the plan.
(d) On request of a party in interest and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

**3.** The Plan of Reorganization was subsequently amended, on December 2, 1983, to provide, *inter alia*, that Mehl-Cedar would be paid 100% in cash on the effective date of the Plan.

ed to this aspect of the plan and on April 12, 1983, filed the instant adversary proceeding seeking relief from the automatic stay to enable it to foreclose on its security interest in New York State Supreme Court.

Forest Hills has now moved for summary judgment dismissing Mehl-Cedar's complaint on the following grounds: 1) insofar as sections 1123 and 1124 of the Code provide for the cure of any default and the deacceleration of any mortgage, the pre-default interest rate should also be reinstated; and 2) even were the post-maturity interest rate to apply, it cannot be enforced since it constitutes an impermissible penalty under New York law.

Mehl-Cedar has filed a cross-motion for summary judgment. It is Mehl-Cedar's position that although Code sections 1123(a)(5)(A) and 1124 permit Forest Hills to cure its arrearages and reinstate the original maturity date of its mortgage, the debtor must use the higher post-maturity interest rate which came into effect after the mortgage was accelerated in calculating its interest obligation to Mehl-Cedar. In addition, Mehl-Cedar urges that section 1124(2)(C) requires the Court to apply the post-maturity interest rate to the entire accelerated debt in order for Mehl-Cedar to remain unimpaired under section 1124 of the Code. Finally, Mehl-Cedar contends that the 2% per month post-maturity interest rate is a valid liquidated damages clause, because the actual damages were difficult to ascertain at the time the contract was entered into and the 2% per month provision was a reasonable approximation of actual damages when the parties executed the mortgage contract.

### Discussion

■ Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Rule of Bankruptcy Procedure 7056, states in pertinent part that a judgment in favor of the moving party "shall be rendered [if] ... there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The test for granting summary judgment is whether the facts set forth in the papers presented on the motion, such as affidavits, depositions, answers to interrogatories, and admissions on file, show that there are no genuine issues of material fact to be tried. *See Burtnieks v. City of New York,* 716 F.2d 982, 985 (2d Cir. 1983); *Engl v. Aetna Life Ins. Co.,* 139 F.2d 469, 472 (2d Cir.1943); 6 J. Moore, W. Taggart & J. Wicker,. Moore's Federal Practice ¶ 56.04 (2d ed. 1983). The mere assertion by both parties of cross-motions for summary judgment do not warrant the granting of summary judgment unless one of the moving parties is entitled to summary judgment as a matter of law. *See Schwabenbauer v. Board of Education,* 667 F.2d 305, 313 (2d Cir.1981); *Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317, 1320 (2d Cir.1975); 6 Moore's Federal Practice, *supra,* ¶ 56.13.

In the case at bar, the Court is satisfied that there are no genuinely disputed facts to be resolved. Rather, the controversy at hand involves only questions of interpretation of applicable law. Therefore, based on the following discussion this court will grant Forest Hills' motion for summary judgment dismissing Mehl-Cedar's complaint and deny Mehl-Cedar's cross motion for summary judgment.

■ Section 1124 of the Code is the statutory provision primarily at issue here. It defines the concept of "impairment" of a claim or interest within a debtor's plan of reorganization. A finding of impairment or non-impairment determines a creditor's right to vote on a debtor's reorganization plan. A creditor that is unimpaired is deemed to have accepted the plan, relieving the debtor of any need to solicit an acceptance by that creditor or class of creditors. Any other creditor has the right to accept or reject a plan. 11 U.S.C. § 1126(a) and (f). If a class of creditors is impaired and rejects the plan, confirmation of the plan may be obtained only if the bankruptcy court finds that the plan does not discriminate unfairly against such class. 11 U.S.C. § 1129(b); *In re Madison Hotel Associates,* 29 B.R. 1003, 1006.

In general, a class of claims or interests is considered to be impaired unless, with respect to each claim or interest of such class, the plan leaves unaltered the holder's legal, equitable, and contractual rights. However, in the case of a creditor's right to receive accelerated payments under the terms of a contract, Congress has declared that although a plan which seeks to deaccelerate a debt and reinstate the original terms of an agreement does *in fact* alter such creditor's legal, equitable and contractual rights, such claim or interest is *deemed* unimpaired under the Code if the plan provides for the cure of the default, the reinstatement of the maturity of the claim or interest, and the compensation of the holder of the claim or interest for the cost of its reasonable reliance upon the contractual provision. 11 U.S.C. § 1124. "In other words, a plan does not impair a claim or interest if it only alters the holder's right under some contractual provision or applicable law to demand or receive accelerated payment of the claim or interest after default." *In re Madison Hotel Associates, supra,* 29 B.R. at 1006.

The intent of Congress in enacting Section 1124 is aptly summed up by the *Collier* treatise, which states:

> Congress quite appropriately concluded that a person that receives the benefits of its original bargain is not impaired even if the plan modifies such person's rights by preventing such person from using a contractual or legal right of acceleration to terminate a valuable contract of the debtor in circumstances where the debtor is willing to cure past defaults and perform under the original terms of the agreement.

5 *Collier on Bankruptcy* ¶ 1124.03 at 1124–14.

In *In re Taddeo,* 685 F.2d 24 (2d Cir. 1982), the Second Circuit recently addressed the issue of whether a debtor may cure a default and reinstate the original maturity date of an accelerated mortgage. Although *Taddeo* involved a Chapter 13 debtor, the Second Circuit Court of Appeals likened Section 1322(b) to Section 1124.

The court discussed Section 1124 at length, noting:

> [Section 1124(1)] declares that *any* change in legal, equitable or contractual rights creates impairment. Having defined impairment in the broadest possible terms, Congress carved out a small exception to impairment in § 1124(2) providing that curing a default, even though it inevitably changes a contractual acceleration clause, does not thereby "impair" a creditor's claim. "The holder of a claim or interest who under the plan is restored to his original position, when others receive less or get nothing at all, is fortunate indeed and has no cause to complain." S.Rep. No. 989, 95th Cong., 2d Sess. 120 (1978). Section 1124(2) merely takes away the creditor's right to vote in the event of cure; the authority to cure is found in § 1123(a)(5)(G) in plain language similar to § 1322(b). See *In re Thompson,* 17 B.R. 748, 753 (Bkrtcy.W.D.Mich.1982). In short, 'curing a default' in Chapter 11 means the same thing as it does in Chapters 7 or 13: *the event of default is remedied and the consequences are nullified.* (emphasis added).

*Id.* at 28–29.

Thus, the language which the Second Circuit employed in *Taddeo* clearly establishes that a cure of a default and reinstatement of a mortgage is deemed to return the parties to their status at a point in time prior to the default and acceleration. It follows logically that if there has been no default and acceleration, there can be no liability for interest on the accelerated debt. *See In re Taddeo, supra, In re Masnorth Corp.,* 36 B.R. 335 (Bkrtcy.N.D.Ga.1984), *In re Masnorth Corp.,* 28 B.R. 892, 896, (Bkrtcy.N.D.Ga.1983).

Furthermore, such a creditor, although it has been deprived of the immediate use of its money, is not entitled to compensatory damages for this loss under section 1124(2)(C). As the court stated in *In re Rainbow Forest Apartments,* 33 B.R. 576 (Bkrtcy.N.D.Ga.1983):

The Court finds that this "loss" is not the type of compensatory damages contemplated by § 1124(2)(c). To award such damages would clearly be counterproductive to Congress' scheme to allow for the reorganization and rehabilitation of debtors in distress.

"The intervention of bankruptcy and the defaults represent a temporary crisis which the plan of reorganization is intended to clear away. The holder of a claim or interest who under the plan is restored to his original position, when others receive less or get nothing at all, is fortunate indeed and has no cause to complain. Curing of the default and the assumption of the debt in accordance with its terms is an important reorganization technique for dealing with a particular class of claims...." [citing Notes of Committee on the Judiciary, Senate Report No. 95–989.]

*Id.* at 578.

█ It is thus clear that Code section 1124(2) provides the debtor in distress with the statutory tools necessary to effect a total healing of the scars of contractual default, by placing the parties into the same position they were in immediately before the default occurred. This healing is accomplished by paying the creditor whatever monies he would have received under the contract had the debtor not defaulted. Therefore, just as the debtor need not pay the post-default accelerated debt, he need not pay the post-default interest rate on the accelerated debt. The creditor is, nevertheless, rightfully categorized as unimpaired, for he is returned to the same position he was in immediately prior to the default, and is thereby given the full benefit of his original bargain. Accordingly, the appropriate rate of interest is 6⅔% per annum.

As the appropriate interest rate has just been determined, this Court will now determine the amount of interest Mehl-Cedar is entitled to receive under the plan of reorganization pursuant to Code section 1124(2)(C). Section 1124(2)(C) requires that a creditor receive compensation for "any damages incurred as a result of any reasonable reliance by such holder on such contractual provision." This Court will thus examine under what circumstances Mehl-Cedar will be entitled to interest and whether Mehl-Cedar is entitled to compound the interest payable to it. In so doing, this court will apply the rule which the United States Supreme Court enunciated for insolvent debtors in *Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946). In *Vanston,* the Supreme Court divided interest claims against insolvent debtors into claims for post-petition interest and claims for pre-petition interest. The Court stated,

When and under what circumstances federal courts will allow interest on claims against debtors' estates being administered by them has long been decided by federal law.... The general rule in bankruptcy ... has been that interest on the debtors' obligations ceases to accrue at the beginning of proceedings. Exaction of interest, where the power of a debtor to pay even his contractual obligations is suspended by law, has been prohibited because it was considered in the nature of a penalty imposed because of delay in prompt payment—a delay necessitated by law if the courts are properly to preserve and protect the estate for the benefit of all interests involved.... As a general rule, *after property of an insolvent passes into the hands of a receiver or of an assignee in insolvency, interest is not allowed on the claims against the funds.* The delay in distribution is the act of the law; it is a necessary incident to the settlement of the estate.

*Id.* at 163, 67 S.Ct. at 240 [citations omitted] [emphasis added]. *Accord, Sexton v. Dreyfus,* 219 U.S. 339, 344, 31 S.Ct. 256, 257, 55 L.Ed. 244 (1911); *Debentureholders Protective Committee of Continental Investment Corporation v. Continental Investment Corporation,* 679 F.2d 264, 268 (1st Cir.1982), *cert. denied,* 459 U.S. 894, 103 S.Ct. 192, 74 L.Ed.2d 155 (1982).

The one exception the Supreme Court makes to this rule applies to simple interest

accruing post-petition on secured claims where the security is sufficient to pay the sum of principal and interest due. *Id.* 329 U.S. at 164, 67 S.Ct. at 240. This exception is, in fact, codified in Section 506(b) of the Code.[4]

In the case at hand the parties do not dispute that the value of the property in question exceeds the total amount of the liens asserted against the property by both Mehl-Cedar and the first mortgagee.[5] Therefore, the court will allow simple interest to be awarded to Mehl-Cedar for the installments of principal which remain unpaid during the pendency of these reorganization proceedings. This interest shall be calculated at the rate "provided under the agreement under which such claim arose", pursuant to Section 506(b). 11 U.S.C. 506(b).

As for Mehl-Cedar's claim for pre-petition interest on the defaulted installments, this court is persuaded by the language of Justice Black, who, in writing for the majority in *Vanston,* declared, "What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed is a question which, in the absence of overruling federal law, is to be determined by reference to state law." *Id.,* at 161, 67 S.Ct. at 239.

Since there is no federal statute which addresses the allowability of claims for pre-petition interest on secured debts, we must look to state law to determine the validity of Mehl-Cedar's claim. And, in the case at hand, there is no dispute that it is the law of the state of New York which must apply, since the limited partnership was formed under the laws of New York, the real property which is the subject of the mortgage is located in New York, and the mortgage was negotiated and executed in New York.

Under New York law, a contractual provision which provides for a higher interest rate post-maturity has long been held to be valid and enforceable. *Ruskin v. Griffiths,* 269 F.2d 827, 832 (2d Cir.1959); *Union Estates Co. v. Adlon Construction Co.,* 221 N.Y. 183, 187, 116 N.E. 984, 985 (1917); *Levy v. Par 3 Golf Development Corporation of America,* 74 A.D.2d 865, 865, 426 N.Y.S.2d 49, 50 (2d Dept.1980); *Bloom v. Trepmal Construction Corp.,* 29 A.D.2d 951, 951, 289 N.Y.S.2d 447 (2d Dept.) *aff'd,* 23 N.Y.2d 730, 296 N.Y.S.2d 372, 244 N.E.2d 62 (1968); *Contra, In re Tastyeast,* 126 F.2d 879, 882 (3d Cir.1942). *See also* 30 Am.Jur. Interest § 42. In contrast, agreements to pay "interest on interest", or compounded interest, have been held void as against public policy by the courts of New York for over a century. *See Debentureholders Protective Committee of Continental Investment Corporation v. Continental Investment Corporation, supra,* 679 F.2d at 271; *Madison Personal Loan, Inc. v. Parker,* 124 F.2d 143, 145 (2d Cir.1941); *Giventer v. Arnow,* 44 A.D.2d 160, 161, 354 N.Y.S.2d 162, 164 (1974) (3rd Dept. *rev'd on other grounds,* 37 N.Y.2d 305, 372 N.Y.S.2d 63, 333 N.E.2d 366 (1975); *Young v. Hill,* 67 N.Y. 162, (1876); *Stewart v. Petree,* 55 N.Y. 621, 623 (1874).

In the case at hand, paragraph 23, which contains the post-maturity provision, states in pertinent part:

> Should all sums due or payable under the mortgage ... not be promptly paid in full on or before the due date, stated or accelerated as a result of default, the mortgagor ... shall pay ... to the mortgage[e] ... interest thereunder at the rate of two (2%) percent per month on the unpaid balance for each and every month. ...

---

**4.** Section 506(b) of the Code states:

> To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose.

**5.** As noted *supra,* the instant case involves a second mortgagee of Forest Hills Apartments. A first mortgage, in the principal amount of $915,682.60, is held by Greenpoint Savings Bank. A third mortgage on the property is held by Elisha Najjar and Albert Nassim. The principal balance due on the third mortgage is $1,625,000.

It is unclear to this court whether this language was intended by the parties to provide that the post-maturity interest rate was to apply to both accrued principal and interest, or whether it was to apply to the principal only. However, "a well recognized canon of construction requires an ambiguous instrument to be interpreted so as to render it valid when another interpretation would have a contrary effect." *Stone v. Young*, 210 A.D. 303, 306, 206 N.Y.S. 95, 97 (1924); *See also, Venizelos, S.A. v. Chase Manhattan Bank*, 425 F.2d 461, 465 (2d Cir.1970); *Nassau Sports v. Peters*, 352 F.Supp. 870, 877 (E.D.N.Y.1972); *Data General Corp., Inc. v. Citizens National Bank of Fairfield*, 502 F.Supp. 776, 784 (D.Conn.1980). Therefore the court must apply the construction which renders the clause valid, and conclude that the parties intended that upon the default and acceleration of the debt, the post-maturity interest rate would be imposed only on the unpaid accelerated principal and not upon the unpaid interest.[6]

Since this Court today holds, *supra*, that a debtor who deaccelerates a mortgage pursuant to section 1124(2)(C) is not liable for the interest which accrues on the accelerated amount, Forest Hills is liable for pre-petition interest only on the principal amounts which accrued during the months between the original default in November of 1981 and the date on which the bankruptcy petition was filed. This holding is in keeping with the general philosophy which the Second Circuit prescribed in *Taddeo*.

### Conclusion

This Court finds that Forest Hills is not liable to Mehl-Cedar for the post-maturity interest rate of 2% per month on the accelerated portion of the mortgage. By the cure and reinstatement provided in Forest Hills' reorganization plan, the parties are returned to their original, pre-default sta-

tus. Furthermore, under the provisions of Section 1124 Mehl-Cedar is not an impaired party, but is merely limited to the damages set forth in Section 1124(2)(C). Those damages shall consist of interest, at the pre-default rate of 6⅔% per annum, on the principal installments in arrears from November 1981 through November 1982, and this interest shall not be compounded. As for the post-petition interest, Mehl-Cedar's claim shall be allowed because the value of the property is greater than the amount of the first mortgage plus Mehl-Cedar's lien. Such interest shall be calculated at the contract rate of 6⅔ percent per annum.

Accordingly, Forest Hills' motion for summary judgment is granted, and Mehl-Cedar's cross-motion for summary judgment is denied.

Settle an appropriate order.

---

6. Even if this court were to conclude that paragraph 23 was, in fact, clear and unambiguous, the result would be the same. For, as the court concluded in *Madison Personal Loan Inc. v. Parker*, 124 F.2d 143, 145 (2d Cir.1941), the only

penalty imposed by the courts on a mortgagee who attempts to recover under a compounded interest provision is a refusal to allow the recovery of the additional interest. *Accord, Young v. Hill*, 67 N.Y. 162, 167 (1876).