**In re SINGER ISLAND HOTEL, LTD., Debtor.**

**Bankruptcy No. 88–03097–BKC–TCB.**

United States Bankruptcy Court, S.D. Florida.

Jan. 20, 1989.

Broad & Cassel, John T. Kinsey, West Palm Beach, Fla., for debtor.

Allen R. Tomlinson, Jones, Foster, Johnston & Stubbs, P.A., West Palm Beach, Fla., and Leonard H. Gilbert, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, Fla., for Singer Ocean Inn, Ltd.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Chief Judge.

The confirmation hearing on this debtor's chapter 11 amended plan (CP 52) was held November 29. On December 28, the U.S. Trustee certified that, apart from the issues raised by the debtor's mortgagee (CP 59 and 65), the plan meets all requirements for confirmation (CP 72).

### The Mortgagee's Objections To The Debtor's Plan

To understand the mortgagee's objection to this plan, some background is necessary. It holds a first mortgage on the debtor's 203–room hotel. The debtor defaulted in December 1986. The mortgagee sought foreclosure the next month. Its July 1988 judgment in the amount of $12.7 million was appealed, but instead of superseding the judgment, the debtor filed for bankruptcy three days before the scheduled foreclosure sale, August 8, 1988. The bankruptcy has stayed the sale. 11 U.S.C. § 362(a).

The mortgagee objects that the plan (1) was "submitted in bad faith, i.e., for the sole purpose of attempting to frustrate [the] foreclosure judgment," and (2) it is based upon an impermissible attempt to reinstate a mortgage which has merged into a foreclosure judgment. (CP 65 at 2 and 3).

A chapter 11 plan may provide for the "curing or waiving of any default." § 1123(a)(5)(G).

This debtor's Amended Plan provides for the curing of its default and the reinstatement of its obligation to its mortgagee, Singer Ocean Inn, Ltd. The plan does so by repeating in ¶ 3.3 the statutory require-

ments of § 1124(2).[1] This subsection defines the three alternative ways a plan may leave creditors "unimpaired". Because unimpaired creditors are:

"conclusively presumed to have accepted the plan, and solicitation of acceptances ... is not required" § 1126(f),

the mortgagee is conclusively presumed to have accepted this plan.

No Circuit has yet passed on the question whether a *chapter 11* debtor may de-accelerate and reinstate a debt like this one that has merged into a foreclosure judgment.[2] However, *In re Glenn*, 760 F.2d 1428, 1435 (6th Cir.), *cert. denied*, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985), which I find most persuasive, disregards the vagaries of State law and holds that the cut-off date of the bankruptcy statutory right to de-accelerate, cure and reinstate mortgages in *chapter 13* is the sale of the mortgaged premises. As stated in *In re Taddeo*, 685 F.2d 24, 29 (2nd Cir.1982):

" 'curing a default' in Chapter 11 means the same thing as it does in Chapters 7 or 13: the event of default is remedied and the consequences are nullified." [3]

I apply, therefore, the reasoning in *Glenn* to this chapter 11 case, and reject both of the mortgagee's argued objections to the debtor's plan. *In re Orlando Tennis World Dev. Co., Inc.*, 34 B.R. 558 (Bankr.M.D.Fla.1983).

### Determination of Amount Due Mortgagee

The debtor's plan does not specify what the debtor proposes to pay its mortgagee to *cure* its default under § 1124(2)(A) or to compensate its mortgagee's *damages* under § 1124(2)(C). Instead, it leaves these determinations to this court. Because this debtor claims that it can and will pay whatever sums are lawfully required under these provisions, it remains only for this court to determine these two sums and see to it that they are paid.

The debtor argues that $48,597 will cure its default (CP 67 at 8) and that the appropriate damages are the mortgagee's court costs ($779), and its attorneys' time charges ($45,685) in connection with the State court foreclosure action which was interrupted by this bankruptcy. (CP 67 at 8–10).

The mortgagee argues that it:

"is entitled to be paid default interest and attorneys' fees, as awarded in the state court, and its attorneys' fees incurred subsequent to entry of the state court judgment." (CP 65 at 10).

The difference between the pre-default interest (11%) and the default interest (25%) amounts to at least $2 million calculated to the judgment, and including statutory interest to the first of this year.[4] The fee awarded by the State court, which included a 2.5 multiplier of the attorneys' time charges, was $114,212 and costs were $779. Its post judgment fees and costs have neither been stated nor estimated by the mortgagee. (CP 45a).

As a practical matter, it makes no difference whether the individual components of the debtor's obligation fall under § 1124(2)(A) as the cost of cure, or under § 1124(2)(C) as damages. The debtor must pay both. I make, therefore, no effort to classify the debtor's obligations.

 *Unpaid mortgage installments.* With the sole exception of the installment

1. "Except as provided in section 1123(a)(4) of this title, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan ... (2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default...." § 1124(2).

2. But see the contrary dicta in *Matter of Madison Hotel Associates*, 749 F.2d 410 (7th Cir.1984) (de-acceleration and reinstatement of mortgage

after Wisconsin "order of foreclosure" but before final judgment is permissible under chapter 11 because judgment has not merged into the mortgage under state law thereby transferring title to the mortgagee).

3. Cited with approval in *In re Entz–White Lumber and Supply, Inc.*, 850 F.2d 1338, 1340 (9th Cir.1988).

4. The mortgagee's calculation ($2.328 million) is 11.7% higher than the debtor's calculation.

due August 1, 1988, this debtor has paid all of its mortgage installments on time including the pre-default interest. I agree with the debtor that it is entitled to offset its undisputed overpayment of property taxes against the unpaid installment, leaving a balance due August 1 of $48,597. Because the mortgagee is over-secured, it is also entitled to interest on that sum from August 1, 1988 to the date payment is made. § 506(b). *In re Forest Hills Assoc.*, 40 B.R. 410, 416–17 (Bankr.S.D.N.Y.1984). For the reasons discussed below, that rate of interest is 11%.

■ *Default interest.* I also agree with the debtor that it is *not* required to pay that portion of the State court judgment which represents the default rate of interest nor, of course, the Florida judgment rate of interest on that sum.[5]

I reach the foregoing conclusion in reliance upon the apparently consistent existing precedent holding that chapter 11 mortgage default cure and reinstatement does not require payment of default interest. In *In re Entz–White Lumber and Supply, Inc.*, 850 F.2d 1338, 1343 (9th Cir.1988), the court said:

> "The more natural reading of sections 506 and 1124 is that the interest awarded should be at the market rate or at the pre-default rate provided for in the contract. *See In re Southeast Co.*, 81 B.R. 587, 592 (BAP 9th Cir.1987) (holding that reliance damage under section 1124(2)(C) 'does not comprise contractual penalty interest rates')."

*In re Forest Hills Associates, supra* at 415–17 (neither cure nor damages under chapter 11 include default interest or compounded interest for over-secured creditor); *In re Orlando Tennis World Dev. Co., Inc.*, 34 B.R. 558, 560–61 (Bankr.M.D.Fla. 1983) (neither cure nor damages under chapter 11 include default interest).

It has neither been contended nor shown before me by the mortgagee that the contract rate of interest is less than the current market rate of interest. The debtor concedes its obligation to pay the contract rate and, with the exception of the August 1988 payment noted above, it has done so.

The mortgagee points to an unpublished decision of this court which cited and followed the reasoning of *In re W.S. Sheppley & Co.*, 62 B.R. 271, 278–79 (Bankr.N.D. Iowa 1986). Relying upon pre-Code decisions, *Sheppley* held that in determining the amount of a mortgagee's claim only contract interest should be allowed, unless only the debtor's shareholders (but not its creditors) would benefit from that decision, but if only the debtor's shareholders were affected, default interest should be allowed. Both the *Sheppley* court and I were construing § 506(b). Neither case involved the cure and reinstatement of a mortgage under § 1123(a)(5)(G) or § 1124(2).

In *In re Entz–White Lumber and Supply, Inc., supra* at 1343, n. 9, the Ninth Circuit said:

> "[we] continue, of course, to recognize bankruptcy courts' 'broad equitable discretion' in awarding post-petition interest. *See In re Anderson*, 833 F.2d 834, 836 (9th Cir.1987)."

*Anderson*, like *Sheppley*, dealt with § 506(b), not with cure and reinstatement of defaulted mortgages. I am confident that the *Entz–White* court did not suggest that the bankruptcy court has equitable discretion to apply a double standard with respect to default interest in construing § 1123(a)(5)(G) or § 1124(2). Such a suggestion would be inconsistent with its rationale for rejecting default interest with respect to cure and reinstatement.

■ *Attorneys' fees.* I agree with the mortgagee that the debtor is collaterally estopped in this court to challenge either the fee or the costs assessed against it by the State court. *In re Held*, 734 F.2d 628, 629 (11th Cir.1984). The total of those sums, $114,991, with interest at 12% (the statutory rate for the State court judgment) is payable by the debtor to the mort-

---

5. The promissory note before me does not identify the default interest here as liquidated damages. (Claim No. 50, Ex. B, p. 1). I do not, therefore, pass on the question whether such a provision would require a different conclusion.

gagee. *In re Masnorth Corp.*, 28 B.R. 892 (Bankr.N.D.Ga.1983); *In re Orlando Tennis World, supra* at 560.

### Conclusion

The debtor shall tender to its mortgagee the cost of cure and damages as above determined and notify this court of its compliance. If it does so within 20 days, a separate order will be entered without further notice or hearing confirming the debtor's amended plan. If it fails to do so by that date, confirmation will be denied under § 1129(a)(8)(B) without further notice or hearing.

DONE and ORDERED.