### In re INNOVATIVE CLINICAL SOLUTIONS, LTD, et al., Debtors.

### Peter J. Almeroth, Bond Opportunity Fund II, LLC, and Steven L. Gidumal, Plaintiffs,

### v.

### Innovative Clinical Solutions, Ltd., a Delaware corporation, PBG Medical Mall Mob 1 Properties, Ltd., a Florida limited partnership, EQSF Advisors, Inc., a New York corporation, 3801 PGA Investors, Ltd., a Florida Limit-

ed Partnership, Third Avenue Trust, a Delaware corporation, Third Avenue Value Fund Series, a Maryland corporation, Aggressive Conservative Investment Fund, L.P., and the Chase Manhattan Bank, N.A., a New York National Association, Michael T. Heffernan and Bruce A. Rendina, Defendants.

Bankruptcy No. 00–3027 (PJW).

Adversary No. 01–155.

United States Bankruptcy Court,
D. Delaware.

Nov. 7, 2003.

Norman L. Pernick, J. Kate Stickles, Donald J. Detweiler, Saul Ewing LLP, Wilmington, DE, Jeff J. Marwil, Paul V. Possinger, Michael S. Terrien, Jenner & Block, LLC, Chicago, IL, for Defendants.

Christopher D. Loizides, Christopher D. Loizides, P.C., Wilmington, DE, Thomas S. McNamara, Indik & McNamara, P.C., Philadelphia, PA, for Plaintiffs.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This is with respect to Defendant Innovative Clinical Solutions, Ltd.'s ("ICSL") motion (Doc. # 77) to dismiss Plaintiffs' second amended complaint in the above captioned adversary proceeding.[1] The second amended complaint consists of 15 separate counts embodied in 179 numbered paragraphs spanning 65 pages. As I indicated in my July 17, 2003 letter to counsel, this matter involves a rather complex factual scenario and disputed issues of law. Given the constraints on the Court's time, it is not possible at this time to address the many issues raised by the non-debtor defendants motions to dismiss. However, I have devoted sufficient time to the matter now to conclude that relief in the form of a revocation order pursuant to 11 U.S.C. § 1144 is not appropriate.[2] Consequently, I will grant ICSL's motion to the extent of dismissing those counts of the second amended complaint which are based on § 1144.

## BACKGROUND

By its Chapter 11 petition, ICSL sought relief under Chapter 11 of the Bankruptcy Code through a prepackaged plan of reorganization (the "Plan"), the primary purpose of which was to exchange its $100 million of 6 3/4% Convertible Debentures (the "Debentures") for newly issued Common Stock in ICSL.

Following negotiations with a steering committee consisting of holders of a majority (in amount) of the Debentures, on June 12, 2000, ICSL's disclosure statement was distributed to all Debenture holders. The deadline for voting on the Plan was set at July 12, 2000. As of that date, 308 Debenture holders, representing an aggregate amount of the bonds of $74,453,000, remitted ballots on the Plan to ICSL's voting agent. Of the 308 total bondholders, 193, or 62.7%, voted in favor of the Plan, representing an aggregate amount of the bonds of $68,870,000 or 92.5% of the total held by Debenture holders voting on the Plan.

Following the voting deadline, on July 14, 2000 ICSL and all of its existing subsidiaries filed voluntary petitions for relief

---

1. This ruling does not directly address the motions to dismiss filed by other Defendants as reflected in Doc. # s 72, 73, 79 and 81.

2. 11 U.S.C. §§ 101 *et. seq.* (the Bankruptcy Code) is hereinafter referred to as "§ ___."

under Chapter 11. This Court set the hearing on the adequacy of the disclosure statement, the approval of the solicitation procedures, and confirmation of the Plan for August 23, 2000, and set August 14, 2000 as the deadline for filing any written objection thereto. None of Plaintiffs filed an objection and none of Plaintiffs filed an appearance in the Chapter 11 cases prior to confirmation of the Plan. In addition, none of Plaintiffs requested or conducted any discovery in these cases prior to confirmation.

At Plaintiff Steven L. Gidumal's ("Gidumal") request, the U.S. Trustee formed an official committee of unsecured creditors ("the Committee") on August 17, 2000, six days before the confirmation hearing. The Committee consisted of six members, including Gidumal as the representative of Plaintiff Bond Opportunity Fund II, LLC ("BOF"). The Committee did not include any member of the pre-petition steering committee. Four of the six Committee members voted to support the Plan, with one abstention by the indenture trustee for the Debentures, and a lone vote against, by BOF through Gidumal. Based on the majority vote in favor of the Plan, the Committee filed a statement of the Committee in support of confirmation of the Plan.

This Court held the confirmation hearing on August 23, 2000, allowing objectors the opportunity to address the Court, and examine witnesses, regardless of whether they had complied with the scheduling order's requirements regarding the filing of written objections to the Plan. Although none of Plaintiffs had filed an objection to the Plan, the Court allowed Gidumal, in his capacity as president of the BOF, to examine witnesses and present his objections orally. Gidumal did not raise any objections to the adequacy of the disclosure statement or the confirmability of the Plan

under § 1129, including any of the objections raised in the second amended complaint. Instead, after cross-examining the Debtors' witnesses, Gidumal merely asked the Court to modify the Plan by placing certain incentive bonuses due ICSL executives in escrow until the end of the fiscal year, at which time the bonuses would be paid out only if the company fully achieved the Plan projections. This Court denied Gidumal's request, because he asked for unauthorized modifications to the Plan, without raising any objections to the adequacy of ICSL's solicitation procedures, the adequacy of the disclosure statement, or the confirmation of the Plan. On August 25, 2000 the Court confirmed the Plan and on September 21, 2000 the Plan became effective (the "Effective Date"). The only class of claims impaired under the Plan was the class consisting of the Debenture holders.

On February 20, 2001 Plaintiffs filed their complaint seeking revocation of the confirmation order and other related relief. On March 29, 2001 Plaintiffs filed an amended complaint and on August 12, 2002 Plaintiffs filed their second amended complaint (the "Complaint"). Prior to having their Debentures converted into Common Stock, Plaintiffs owned an aggregated of $1,152,000 face amount of the Debentures, representing just over 1% of the $100 million of Debentures. No other former Debenture holders have sought relief from the confirmation order. The Complaint alleges, and Defendants do not dispute, that whereas the disclosure statement estimated the value of the new Common Stock to be in the range of $65 million to $95 million, ten months after the Effective Date the Common Stock was trading at $0.26 per share, giving ICSL a market capitalization of approximately $3 million. Presumably, there has been no improvement to date in the market value of the Common Stock. The Complaint alleges

that the effect of the Plan was to thwart Plaintiffs from realizing the true value of their Debenture holdings. Specifically, the Complaint alleges fraudulent conduct by Defendants for their failure to disclose alleged conflicts of interest, business relationships and other alleged vote procurement misconduct that enabled Defendants to achieve approval of the Plan to promote the personal interests of Defendants.[3]

## STANDARD OF REVIEW

In deciding a motion to dismiss a complaint filed under Fed.R.Civ.P. 12(b)(6), the court is required to determine whether, under any reasonable reading of the pleadings, plaintiffs may be entitled to relief, and must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom. *Langford v. City of Atlantic City,* 235 F.3d 845, 847 (3d Cir.2000). In considering a Rule 12(b)(6) motion, the court should not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence in support of their claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Thus, a court should not grant a motion to dismiss "unless it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## DISCUSSION

■ By its motion to dismiss ICSL seeks dismissal of the Complaint on a

number of grounds, including the doctrine of equitable mootness, which it asserts precludes the entry of a revocation order as contemplated by § 1144.

■ In *In re Continental Airlines,* 91 F.3d 553, 560 (3d Cir.1996), the Third Circuit held that the "foremost consideration [in determining whether the doctrine of equitable mootness applies] has been whether the reorganization plan has been substantially consummated." Substantial consummation is defined in the Bankruptcy Code as:

> (a) transfer of all or substantially all of the property proposed by the plan to be transferred;

> (b) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

> (c) commencement of distribution under the plan.

*Id.* at 561 (quoting 11 U.S.C. § 1101(2)).

ICSL points to the following facts in support of its claim that now, more than three years after the Effective Date of the Plan, the Plan has been substantially consummated. All of the property proposed to be transferred under the Plan has been transferred. The transfers include, but are not limited to, the following:

- ICSL issued 10.8 million shares of new Common Stock to the holders of the outstanding Debentures and the Debentures were canceled;

---

**3.** Although Plaintiffs maintain that their causes of action here may benefit other former Debenture holders, (Doc. # 83 at 23), it is worth noting that: (1) the Complaint is not a class action and cannot address alleged damages sustained by anyone other than Plaintiffs, (2) there is no evidence that Plaintiffs' view of how the Plan confirmation came about represents the view of any other former Debenture holders and (3) there are no other actions pending in this Court seeking relief from the confirmation order and applicable statutes of limitations likely precludes any relief at this late date for other Debenture holders.

- an additional 1.2 million shares of the new Common Stock was exchanged for old Common Stock;

- ICSL entered into a new $10 million credit facility with Ableco Finance LLC. All debt outstanding and due under the credit agreement with Heller Healthcare Finance, Inc., as the Holder of a Class I revolving credit facilities claim, was fully satisfied;

- ICSL adopted an option plan and issued options to acquire new Common Stock to ICSL's executive management and directors, including outside directors. These options affected 16% of the outstanding shares of new Common Stock; and

- as required under the terms of the new credit facility, a substantial number of subsidiary debtors (thirty-seven to date) have been liquidated and dissolved. Others are currently in the process of being liquidated or dissolved.

In addition, the following transactions relating to the new ICSL have taken place:

- more than 12.95 million shares of new Common Stock have traded on the over-the-counter market;

- a new Board of Directors has been overseeing the operations of ICSL and its subsidiaries;

- ICSL's existing directors and officers liability insurance policy was terminated and a new policy was purchased;

- ICSL entered into employment contracts with five senior executives and paid out retention payments to senior management totaling $1,697,000. The five senior executives have since left the reorganized debtor as a result of, among other things, the disposition or discontinuance of various business lines;

- ICSL sold its principal operating subsidiary, Clinical Studies, Ltd., to Comprehensive NeuroScience, Inc. in exchange for 22,374,060 shares of Comprehensive NeuroScience, Inc. common stock;

- ICSL sold its oncology and hematology clinical trials business operation;

- ICSL discontinued operations of its network management business.

In essence, old ICSL no longer exists and the new ICSL has been operational for a number of years and has effected innumerable transactions as reorganized entities. Every asset that old ICSL controlled came into the control of new ICSL long ago, except for assets that were used to satisfy debts pursuant to the terms of the Plan.

The above recited facts are essentially undisputed. Indeed, Plaintiffs concede in their opposition brief: "Defendants contend (and Plaintiffs do not dispute) that the prepackaged plan was substantially consummated, on or shortly after the Effective Date." (Doc. # 83, p. 1).

 "Under this widely recognized and accepted doctrine, the courts have held that [an action] should be dismissed as moot when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable." *In re Continental Airlines,* 91 F.3d 553, 558–59 (3d Cir.1996). The doctrine of equitable mootness is most often applied in the context of an appeal, but it applies with equal force to actions brought to revoke a plan of reorganization. *See In re Circle K Corp.,* 171 B.R. 666, 669 (Bankr.D.Ariz.1994)(holding that § 1144 adversary complaint should be dismissed on equitable mootness grounds because the plan was substantially consummated).

 In its decision in *In re Continental Airlines,* the Third Circuit articulated five

**142**

factors that a Court must consider in applying the doctrine of equitable mootness:

1) whether the reorganization plan has been substantially consummated;
2) whether a stay has been obtained;
3) whether the relief requested would affect the rights of parties not before the court;
4) whether the relief requested would affect the success of the plan; and
5) the public policy of affording finality to bankruptcy judgments.

*In re Continental Airlines,* 91 F.3d at 560 (citing *Manges v. Seattle–First Nat'l Bank,* 29 F.3d 1034, 1039 (5th Cir.1994)). I find that each of those factors strongly favors a finding of mootness here.

The situation before this Court is similar to that confronted by the court in *In re Circle K Corp.,* 171 B.R. 666 (Bankr. D.Ariz.1994). In that case, debenture holders sought to revoke a Chapter 11 Plan under § 1144. The debenture holders alleged that the defendants perpetrated a fraud during the confirmation of debtors' plan by concealing the fact that management would hold an equity stake in the reorganized debtors. *Id.* at 667. The debenture holders also alleged that the defendants falsely represented the value of Circle K in the confirmation process. *Id.* at 667–68. The court accepted these allegations as true for purposes of the motion to dismiss. *Id.* at 668.

In finding that the doctrine of equitable mootness required the dismissal of the debenture holders' complaint, the court found that the plan at issue was substantially consummated and noted several facts that warranted its finding, including the following:

- new stock in the reorganized debtor was issued;
- the old stock of the debtor was canceled;

- the debtors and subsidiaries, as entities, underwent changes in that mergers had occurred;
- over $300 million was paid to a disbursing agent; and
- trade creditors commenced doing business with the reorganized debtor.

*Id.* at 669. The state of consummation of ICSL's Plan is no different than of Circle K's plan. "Confirmation plans eventually reach a point of completion where to reverse the confirmation order would be 'knock the props out from under the authorization of every action that has taken place' under the plan." *In re Servico, Inc.,* 161 B.R. 297, 301 (S.D.Fla.1993)(citing *Miami Ctr. Ltd. P'ship v. Bank of N.Y.,* 838 F.2d 1547, 1555 (11th Cir.1988)). ICSL's Plan is far past that point of no return.

Having acknowledged the substantial consummation of the Plan and the need to protect the multitude of parties who relied upon the confirmation order in dealing with ICSL, Plaintiffs nevertheless argue that "this Court can fashion 'some form of meaningful relief' in the present case." (Doc. # 83, p. 18). In support of this position, Plaintiffs cite *Gillman v. Continental Airlines (In re Continental Airlines),* 203 F.3d 203 (3d Cir.2000) and *In re PWS Holding Corp.,* 228 F.3d 224 (3d Cir.2000) where confirmation orders were modified on appeal. I find those two cases to be quite inapposite to the situation before me. Those two cases did not involve § 1144 and both involved narrowly limited carving out of third party releases in plans of confirmation.

Recognizing the difficulty of applying § 1144 to the facts here, Plaintiffs suggest that what the revocation order should do is to essentially leave everything intact but allow Plaintiffs to pursue common law claims against the non-debtor Defendants.

Plaintiffs articulate their proposal as follows:

> [T]he Court could readily mold an order that would revoke confirmation of the Prepackaged Plan, and thus enable Plaintiffs to pursue their common law claims against the non-debtor defendants, without unraveling the entire Prepackaged Plan. For example, the Court could include provisions in the revocation order reaffirming and ratifying all transactions and transfers of property by ICSL, as well as the corporate restructuring and recapitalization of ICSL, that occurred in connection with consummation of the Prepackaged Plan, and even, to the extent the Court deemed it necessary and appropriate, enjoining claims against the "new" ICSL entity itself.

(Doc. # 83, at 22–23).

In my July 17, 2003 letter to counsel I stated what I saw as a serious problem with Plaintiffs' proposal for a § 1144 order. I will briefly restate that view here. Section 1144 provides as follows:

> On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, *the court may revoke* such order if and only if such order was procured by fraud. An order under this section revoking an order of confirmation *shall–*
>
> (1)contain such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation; and
>
> (2) revoke the discharge of the debtor.

(emphasis added).

▮ The language of § 1144 is unambiguous. Upon a timely motion by a party in interest the court may revoke the order of confirmation if it finds that such order was procured by fraud. If a revocation order is entered it must contain two elements: (1) a provision protecting entities who acquired rights in good faith reliance on the order of confirmation and (2) a revocation of the discharge of the debtor. Thus, if I conclude that the order confirming the Plan was procured by fraud, then in entering a revocation order, in addition to providing for the protection of rights acquired in good faith reliance on the confirmation order, I *must* revoke ICSL's discharge.[4] It seems to me that Plaintiffs' proposal for fashioning appropriate relief is in fundamental conflict with the requirement of § 1144 that the revocation order revoke a debtors' discharge. Given the facts of this consummated Plan, I conclude that it is not possible to grant the relief requested pursuant to § 1144.

While on the one hand Plaintiffs suggest that the revocation order could enjoin claims against the new ICSL entity, they do not address the question of who would be impacted by the required revocation of the discharge. In this regard it is important to note that the only pre-petition class of creditors impaired by the Plan were the Debenture holders. Because the discharge revocation would have meaning only as to the Debenture holders, if, as Plaintiffs suggest, those claims could be enjoined then in effect there would be no revocation of the discharge. Plaintiffs' scheme is simply not workable given the directive of § 1144.

▮ In further acknowledgment of the futility of crafting a revocation order here which satisfies the directive of § 1144, Plaintiffs argue that as an alternative remedy the Court should *modify* the

---

**4.** Consistent with this requirement I note that the Complaint specifically prays for "Revoking the Debtors' Discharge." (Doc. # 59 at 64).

confirmation order to permit Plaintiffs to recover damages from non-debtor Defendants. (Doc. # 83, p. 2). Presumably, what Plaintiffs seek here is to modify the release and exculpation provisions of the Plan. This is obviously not a form of relief contemplated by § 1144. Indeed, it is a request for a modification of the Plan. However, § 1127(b) provides the sole means for modifying a confirmed plan: "[t]he proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan..." Of course, the Plan has already been substantially consummated and Plaintiffs are not the proponents of the Plan nor the reorganized debtor.[5]

## CONCLUSION

For the reasons set forth above, I conclude that Plan consummation transactions and the post Effective Date business transactions are so persuasive that it is not feasible to effectively revoke the discharge pursuant to § 1144. Plaintiffs' proposal to revoke (or modify) the confirmation order without an effective revocation of the discharge is not permitted under § 1144. Therefore, § 1144 relief is not available to Plaintiffs.

## ORDER

For the reasons set forth in the Court's Memorandum Opinion of this date, Defendant Innovative Clinical Solutions, Ltd.'s motion to dismiss (Doc. # 77) is GRANTED to the extent that Plaintiffs are not entitled to relief under 11 U.S.C. § 1144.

---

**5.** I express no opinion as to whether a Plan modification scheme such as that argued for by Plaintiffs would be doable pursuant to Fed. R. Bankr.P. 9024 which incorporates Fed. R.Civ.P. 60(b). Section 1144 does not preclude the application of Fed. R. Bankr.P. 9024 but the Complaint does not seek its relief based on that rule and that rule speaks in terms of proceeding by way of a motion, not a complaint.